LIFE INSURANCE COMPANY OF NORTH AMERICA
AND VETERANS LIFE INSURANCE COMPANY,
ELIZABETH WOLLETT, an Individual, Appellants,
v. JENNIFER MATHILDA WOLLETT, a Minor Child;
AND DAVID MICHAEL WOLLETT, a Minor Child,
Respondents.

No. 18704

December 21, 1988                                766 P.2d 893

*Edwards, Hunt, Hale & Hansen* and *Travis C. Williamson,* Las Vegas, for Appellant Veterans Life Insurance Co.

*Hawkins & Sharp* and *Keegan G. Low,* Reno, for Appellant Life Insurance Company of North America.

*Mooney & Boetsch,* Reno, for Appellant Elizabeth Wollett.

*Diehl, Evans & Associates,* Fallon, for Respondents.

## OPINION[1]

*Per Curiam:*

This proceeding is before this court pursuant to the certification procedure set forth in NRAP 5. This case presents two issues certified to us by the United States District Court, District of Nevada, the Honorable Bruce R. Thompson, presiding.[2] The United States District Court phrased the two issues as follows:

1. Whether a person who has willfully, unlawfully and intentionally taken the life of an insured person may, under the laws of the State of Nevada, receive the proceeds of insurance on the life of decedent.

2. Whether the provisions of NRS 688A.420 constitute the exclusive basis under Nevada law for denying entitlement to insurance proceeds, thus limiting such preclusion solely to a policy beneficiary actually "convicted of murder" of the insured.

On November 5, 1985, appellant Elizabeth Wollett (Wollett) shot and killed her husband, Richard Wollett. She was originally charged with murder, in violation of NRS 200.010, on December 2, 1985. As a result of a plea bargain agreement between the Nye County District Attorney and Wollett, an amended information was filed on March 12, 1986, charging Wollett with involuntary manslaughter in violation of NRS 200.070. The language of the amended information states that Wollett killed her husband "without intending to do so. . . ." Wollett subsequently entered a plea of nolo contendere to the charge contained in the amended information.[3]

Appellants Life Insurance Company of North America and Veterans Life Insurance Company had previously issued policies of insurance on the life of Richard Wollett, and the benefits under these policies—$150,000.00 and $70,000.00 respectively—were

---

[1]THE HONORABLE E. M. GUNDERSON, Chief Justice, did not participate in the decision of this matter. Pursuant to NRAP 5, the clerk of this court shall transmit a certified copy of this opinion under seal of the Supreme Court of Nevada to the federal district court and to the parties.

[2]NRAP 5 provides, in relevant part:

> The Supreme Court may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, or of the District of Columbia, or a United States District Court, when requested by the certifying court, if there are involved in any proceeding before those courts questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state.

[3]The district court sentenced Wollett to six years imprisonment, which it suspended, and five years probation.

paid over by appellants to Wollett, the primary beneficiary named in each policy.

On July 30, 1986, Standard Insurance Company, which had also issued a policy on the life of Richard Wollett which named Wollett as a primary beneficiary, filed an interpleader action in federal district court, naming as defendants Wollett and her minor children, Jennifer and David Wollett. This action alleged uncertainty on the part of Standard Insurance Company as to the proper distribution of benefits under its insurance policy given the circumstances surrounding the death of Richard Wollett.

On April 1, 1987, a court-appointed guardian ad litem for the Wollett children answered the interpleader complaint, alleging, among other things, that the killing of Richard Wollett was willful, intentional and unlawful. The prayer of that answer requested the court to declare that the Wollett children are entitled to receive all of the proceeds of the policy issued by Standard Insurance Company.

On April 6, 1987, a third-party complaint was filed on behalf of the Wollett children against appellant Life Insurance Company of North America and Veterans Life Insurance Company, seeking direct recovery of the policy benefits under the policies issued by appellants based upon alleged bad faith in the payment of these benefits to Wollett.

At the same time, the Wollett children filed a cross-complaint against Wollett, requesting the court to impress a constructive trust upon the proceeds of all life insurance policies received by Wollett and all other real and personal property to which she had succeeded upon the death of Richard Wollett, as surviving spouse or joint tenant of Richard Wollett.

Appellants Elizabeth Wollett, Life Insurance Company of North America, and Veterans Life Insurance Company filed several dispositive motions with respect to the third-party complaint and cross-complaint. These motions were heard and denied by the federal district court on September 4, 1987. The court's action in denying these motions was based upon the paucity of Nevada law bearing on the issues presented. The court made no definitive ruling on these issues, which it found determinative of the action, and accordingly, certified the instant questions to this court.

Appellants contend that NRS 688A.420 constitutes the exclusive basis under Nevada law for denying entitlement to insurance proceeds.[4] Specifically, appellants contend that because the legis-

---

[4] NRS 688A.420 states:

No person convicted of the murder of a decedent is entitled to any part of the proceeds of a policy of insurance on the life of the decedent.

lature chose only to deny insurance proceeds to persons convicted of murder, it did not intend to bar a person convicted of manslaughter. Appellants rely upon our recent decision in Holliday v. McMullen, 104 Nev. 294, 756 P.2d 1179 (1988), in which we construed NRS 134.007.[5]

Respondents, on the other hand, contend NRS 688A.420 should be construed to conform to the common law rule which bars payment of proceeds to a beneficiary of a life insurance policy who feloniously kills the insured, whether convicted of murder or not. This contention is without merit.

In *Holliday,* we held that the language of NRS 134.007 must be given its plain meaning, so that "only a criminal conviction of murder will preclude an individual from succeeding to an estate." 104 Nev. at 294, 759 P.2d 1179. The operative language of NRS 134.007 and NRS 688A.420 is almost identical. The statutes were enacted by the legislature at the same time. Neither the legislative history nor common sense indicate that NRS 688A.420 should be construed differently from NRS 134.007.[6] Hence, we hold that NRS 688A.420 bars only a beneficiary actually convicted of murder as defined in NRS 200.010 from receiving insurance proceeds under a policy on the life of the insured.[7] A person convicted of involuntary manslaughter pursuant to NRS 200.070[8] is thus not barred from receiving insurance proceeds. Therefore, we cannot agree with respondents' contention that where a criminal trial has not resulted in a murder conviction, a claimant may prevent the perpetrator from receiving insurance proceeds by showing in a subsequent civil action that the killing was willful, intentional and unlawful.

---

If there is no beneficiary named in the policy to whom the proceeds are to be paid if the convicted person cannot or may not receive them, the proceeds must be placed in the estate of the decedent.

[5]NRS 134.007 states:

No person convicted of the murder of the decedent is entitled to succeed to any portion of the decedent's estate. The portion to which he would otherwise be entitled to succeed goes to the other persons entitled to it under the provisions of this chapter.

[6]*See* Nev. Stat. ch. 419, §§ 4, 7 at 779-80.

[7]NRS 200.010 states:

Murder is the unlawful killing of a human being, with malice aforethought, either express or implied, or caused by controlled substance which was sold to a person in violation of chapter 453 of NRS. The unlawful killing may be effected by any of the various means by which death may be occasioned.

[8]NRS 200.070 provides:

1. Involuntary manslaughter is the killing of a human being, without any intent to do so, in the commission of an unlawful act, or a

Respondents contend that NRS 688A.420 does not preempt the common law. Respondents claim that the legislative intent was to expand rather than narrow the common law, so that the common law principle that a malfeasor cannot profit from his wrong survives NRS 688A.420. Respondents are in error. At common law, pursuant to the principle that one could not benefit from his crime, a beneficiary who feloniously killed the insured could not recover under the policy. Rose v. Rose, 79 N.M. 435, 444 P.2d 762 (1968). Our legislature, by clear and unambiguous language, has prohibited only those convicted of murder from profiting from their misdeeds. By enacting NRS 688A.420, the legislature has chosen to preempt the common law, and in so doing has made the statute the exclusive basis under Nevada law for denying entitlement. *Cf.* Holliday v. McMullen, 104 Nev. at 294, 756 P.2d at 1179 (by enacting NRS 134.007, the legislature has preempted the common law).

lawful act which probably might produce such a consequence in an unlawful manner; but where the involuntary killing occurs in the commission of an unlawful act, which, in its consequences, naturally tends to destroy the life of a human being, or is committed in the prosecution of a felonious intent, the offense is murder.

2. If a person dies otherwise than of natural causes as a result of a violation of NRS 484.348, and no person intentionally caused his death, the driver is guilty of involuntary manslaughter.