**139 Nev., Advance Opinion 39**

## IN THE SUPREME COURT OF THE STATE OF NEVADA

BROOKE WESTLAKE KELLEY,
Appellant,
vs.
SCOTT G. KELLEY,
Respondent.

No. 84685

FILED

SEP 28 2023

ELIZABETH A. BROWN
CLERK OF SUPREME COURT

BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order in post-divorce decree custody litigation awarding a parent sole legal custody for the limited purpose of vaccinating a minor child against COVID-19. Second Judicial District Court, Family Division, Washoe County; Frances Doherty, Sr. Judge.

*Affirmed.*

Attorney Marilyn D. York, Inc., and Marilyn D. York and Chloe L. McClintick, Reno,
for Appellant.

Scott G. Kelley, Sparks,
Pro Se.

_____

BEFORE THE SUPREME COURT, EN BANC.[1]

### OPINION

By the Court, STIGLICH, C.J.:

The best-interest-of-the-child standard is ubiquitous in child custody matters, and the Legislature and this court often guide such

_____

[1]The Honorable Ron Parraguirre, Justice, voluntarily recused himself and thus did not participate in the decision of this matter.

23-31815

analysis by providing factors for district courts to weigh in making best-interest determinations. We now hold that when parents with court-ordered joint legal custody of a minor child disagree on medical decisions concerning that child, the district court breaks the tie by determining which course of action is in the child's best interest. Because district courts lack guidance on how to apply the best-interest-of-the-child standard in this context, we adopt nonexhaustive factors for district courts to consider in making such determinations: (1) the seriousness of the harm the child is suffering or the substantial likelihood that the child will suffer serious harm; (2) the evaluation or recommendation by a medical professional; (3) the risks involved in medically treating the child; and (4) if the child is of a sufficient age and capacity to form an intelligent preference, the expressed preference of the child.

Here, divorced parents with joint legal custody disagreed on whether their 11-year-old child should be vaccinated against COVID-19. The district court found that vaccination was in the child's best interest based on the child's pediatrician's recommendation and government and professional groups' guidelines and research results. Although the district court did not have the benefit of express factors to weigh, we conclude the district court did not abuse its discretion in finding vaccination in the child's best interest because consideration of the other factors would not change the result in this case. Accordingly, we affirm.

*FACTS AND PROCEDURAL HISTORY*

When appellant Brooke Westlake Kelley and respondent Scott G. Kelley divorced, they stipulated to joint legal custody of their two minor children, G.W.-K. and A.W.-K. Specifically, Brooke and Scott agreed to "confer on all matters regarding the medical care of the children, including medical, dental, orthodontic, [or] surgical [decisions]." However, the parties

SUPREME COURT
OF
NEVADA

(O) 1947A

2

disagreed on whether to have the children vaccinated against COVID-19. Scott wanted to vaccinate the children in preparation for international trips, but Brooke disagreed, citing the vaccine's novelty and unknown long-term effects. Scott then moved the district court for an order compelling Brooke to allow the children to be vaccinated, arguing that vaccination was in the children's best interests. Brooke opposed the motion but did not object to the best-interest-of-the-child standard.

At the time of the district court's evidentiary hearing on the matter, G.W.-K. was 11 years old (almost 12), and A.W.-K. was 3 years old. The parties submitted a recommendation from the children's pediatrician indicating that G.W.-K. should be vaccinated, but not A.W.-K., who was too young to be eligible for the vaccines available at the time. Additionally, Scott and Brooke testified. Scott testified that he believed it was in the children's best interests to be vaccinated based on the pediatrician's recommendation and the risk of illness he saw the COVID-19 pandemic pose. Brooke testified that she did not want the children vaccinated for several reasons: (1) the children were young and healthy, (2) the COVID-19 vaccine was new and there were no studies on its effectiveness, (3) she got the vaccine but nonetheless still got sick with COVID-19, (4) she worried the vaccine could affect the fertility of her children, and (5) the vaccine may impact G.W.-K.'s behavior in a negative way. She also testified that she believed that the COVID-19 pandemic was no longer a medical emergency, given that, by the time this issue arose, mask and vaccine mandates had been lifted. In closing, Brooke's counsel for the first time raised the prospect of a "medically necessary" standard. She argued that "[t]ypically, [t]he Court uses medically necessary as the terminology when we are talking about recommendations." She continued that "[w]hat we are not seeing is

SUPREME COURT
OF
NEVADA

(O) 1947A

3

this doctor say is that the COVID vaccine for these children or particularly, [vaccination for G.W.-K.] is medically necessary."

The court took judicial notice of the Centers for Disease Control and Prevention (CDC) and American Academy of Pediatrics (AAP) guidelines and research from those organizations regarding the safety of the COVID-19 vaccine, accepted the pediatrician's recommendations, and orally ruled that it was in G.W.-K.'s best interest for the vaccination to go forward.[2] After the oral ruling, Brooke's counsel inquired for a point of clarification as to whether "medically necessary" was the applicable standard. The court answered that the best interest of the child controlled. A written order followed, awarding Scott "sole legal custody to act singularly to obtain the COVID vaccine" for G.W.-K. Brooke appeals, arguing that the district court erred in failing to apply a "medically necessary" standard and alternatively that the court did not properly analyze G.W.-K.'s best interest.

## DISCUSSION

*The best-interest-of-the-child standard applies*

Brooke argues that the district court infringed her fundamental right to the care, custody, and control over her child by applying the best-interest-of-the-child standard. Rather than the best-interest standard, Brooke contends that the district court should have applied a medically necessary standard derived from NRS 695G.055.

---

[2]On appeal, Brooke briefly argues that the district court should not have taken judicial notice of the CDC and AAP guidelines. She did not object below, so this argument is waived. *See Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) ("A point not urged in the trial court, unless it goes to the jurisdiction of that court, is deemed to have been waived and will not be considered on appeal."). We note that courts in other jurisdictions have taken judicial notice of CDC and AAP guidelines regarding vaccinations. *See, e.g., Brown v. Smith*, 235 Cal. Rptr. 3d 218, 223 (Ct. App. 2018).

Although Brooke failed to preserve a challenge to applying the best-interest-of-the-child standard by neglecting to raise it until after the district court's oral ruling, we exercise our discretion to consider and clarify this constitutional issue. *See Barrett v. Baird*, 111 Nev. 1496, 1500, 908 P.2d 689, 693 (1995) (electing to consider a constitutional issue for the first time on appeal notwithstanding the failure to object below), *overruled on other grounds by Lioce v. Cohen*, 124 Nev. 1, 17, 174 P.3d 970, 980 (2008). Whether the district court applied the correct legal standard and whether such standard infringes on a fundamental right are questions of law we review de novo. *Lawrence v. Clark County*, 127 Nev. 390, 393, 254 P.3d 606, 608 (2011) (constitutional interpretation); *Staccato v. Valley Hosp.*, 123 Nev. 526, 530, 170 P.3d 503, 505-06 (2007) (correct legal standard).

Parents have a fundamental right to manage the "care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). When divorced parents have joint legal custody, they are both responsible for making decisions regarding the children's health, education, and religious upbringing. *Rivero v. Rivero*, 125 Nev. 410, 420, 216 P.3d 213, 221 (2009), *overruled on other grounds by Romano v. Romano*, 138 Nev. 1, 4, 501 P.3d 980, 983 (2022). Generally, when parents agree on how to raise their children, courts may not interfere. *Arcella v. Arcella*, 133 Nev. 868, 870, 407 P.3d 341, 344 (2017). But when parents with court-ordered joint legal custody disagree on a parenting decision, "then the parties may appear before the court on an equal footing to have the court decide what is in the best interest of the child." *Rivero*, 125 Nev. at 421, 216 P.3d at 221-22 (internal quotation marks omitted). And in a custody dispute, the district court may enter "an order for the custody, care, education, maintenance and

SUPREME COURT
OF
NEVADA

(O) 1947A

5

support of the minor child as appears in his or her best interest." NRS 125C.0045(1)(a).

We hold that a parent's constitutional interest in the care, custody, and control of their child is not infringed when the district court settles a dispute between parents with joint legal custody under the best-interest-of-the-child standard. It is presumed that parents make health-related decisions for their children with the children's best interests in mind. *See* NRS 125C.002(1) (stating presumption that joint legal custody is in a child's best interest); *Rivero*, 125 Nev. at 420, 216 P.3d at 221 (recognizing that legal custody involves making healthcare decisions for a child and that joint custody requires that parents act in the child's best interest). When the parents, who have equal constitutional rights concerning the care of their children, disagree on what is in the children's best interests, the court decides. *Rivero*, 125 Nev. at 421, 216 P.3d at 221-22. Basing a decision on what is "medically necessary" alone goes beyond breaking a tie, then, and could infringe a parent's rights to control by requiring a higher showing—that something is or is not "medically necessary." *See Mack v. Ashlock*, 112 Nev. 1062, 1065-66, 921 P.2d 1258, 1260-61 (1996) (stating that the court's sole consideration in custody disputes is the child's best interest and rejecting a standard other than best interest by a preponderance of the evidence).

Our decision in *Arcella* is analogous. There, divorced parents with joint legal custody disagreed on whether to send their child to a religious private school or a local public school. 133 Nev. at 869, 407 P.3d at 344. The mother objected to her child receiving a religious education. *Id.* In light of the mother's objection, the district court ordered the child to attend the public school. *Id.* This court held that "a district court does not

Supreme Court
OF
Nevada

(O) 1947A

6

violate the First or Fourteenth Amendments by ordering a child to attend a school over a parent's religious objection." *Id.* at 871, 407 P.3d at 345. To the contrary, a district court must order a child to attend a religious school over a parent's objection if attending the religious school is in the child's best interest. *Id.* Although *Arcella* addressed the First Amendment rather than substantive due process (from which the fundamental interest in the care, custody, and control of a child arises), if a court can override a parent's religious objection if attending a religious school is in the child's best interest, similarly, a district court may override a parent's objection to vaccination if vaccination is in the child's best interest.

Other jurisdictions similarly hold that where parents with joint legal custody disagree on an issue related to the child's upbringing, the court's resolution based on the best interest of the child does not contravene the complaining parent's fundamental rights regarding the care, custody, and control of the child. For example, the Arizona Court of Appeals in *Jordan v. Rea* observed that although each parent has a constitutional right to control the upbringing of their child, where the parents seek to exercise those rights in a conflicting manner, "there is no usurpation by the court of either parent's constitutional rights" when "the court is called upon to resolve that conflict." 212 P.3d 919, 927 (Ariz. Ct. App. 2009) (applying a best-interest standard when parents are unable to agree on choice of school). The Alabama Court of Appeals likewise recognized that "a court may apply the best-interests standard in a custody dispute between such parents [sharing joint legal custody] without implicating the Fourteenth Amendment due-process rights of either parent," *Morgan v. Morgan*, 964 So. 2d 24, 31 (Ala. Civ. App. 2007), and the New Hampshire Supreme Court applied this logic in rejecting an argument that strict scrutiny applies when

a district court adjudicates a child's best interest even though it involves a parent's fundamental right to make decisions about the child's upbringing, *In re Kurowski*, 20 A.3d 306, 317 (N.H. 2011). Relevantly, various courts across the country have applied the best-interest-of-the-child standard where parents with joint legal custody disagree over vaccinating a minor child.[3] Accordingly, we conclude that the district court did not err in considering the vaccination issue under the best-interest-of-the-child standard.

Insofar as Brooke relies on NRS 695G.055, a provision in the chapter on managed care, that statute defines "medically necessary" for insurance purposes. *See, e.g.*, NRS 422.27179(1)(a)(2) & (3)(a) (mandating Medicaid coverage when "medically necessary" and referring to NRS 695G.055 for the meaning of that term); NRS 687B.740 (prohibiting an insurance provider from enticing healthcare providers to deliver services less than what is "medically necessary"). In the insurance context,

---

[3]*See, e.g.*, *A.R. v. J.A.*, No. CK14-01551, 2022 WL 11121330, at *3 (Del. Fam. Ct. Sept. 14, 2022) (holding that the mother's position to vaccinate her child against COVID-19 aligned with the best interest of the child); *Nieber v. Nieber*, No. A20-0616, 2021 WL 1525184, at *2 (Minn. Ct. App. Apr. 19, 2021) (confirming that the best-interest standard applies where parents with joint custody disagree on vaccination); *J.F. v. D.F.*, 160 N.Y.S.3d 551, 556-57 (N.Y. Sup. Ct. 2021) (finding vaccination to be in a child's best interest); *L.L.B. v. T.R.B.*, 283 A.3d 859, 864 (Pa. Super. Ct. 2022) (holding the district court properly applied the best-interest standard in resolving an impasse between parents with joint custody who disagreed on COVID-19 vaccination); *In re A.J.E.*, 372 S.W.3d 696, 699 (Tex. App. 2012) (holding that resolving a dispute between parents with joint custody regarding immunizations under the best-interest-of-the-child standard does not infringe a fundamental right because the government is not overriding the will of parents who agree on a medical decision or a sole parent's decision).

medically necessary means "health care services or products that a prudent physician would provide to a patient to prevent, diagnose or treat an illness, injury or disease." NRS 695G.055. Brooke has not shown that this standard applies in family law contexts. Further, we see no justifiable reason to shift the inquiry away from the best interest of the child in favor of the prudent physician. As discussed below, we hold that a medical professional's recommendation is a factor in determining the best interest of the child, but it is not the sole or necessarily conclusive factor.

*Factors to consider in determining the best interest of the child*

Alternatively, Brooke argues that the district court abused its discretion in applying the best-interest-of-the-child standard. She points out that the district court did not analyze the best-interest factors laid out in NRS 125C.0035(4). She also contends that the district court erred in simply accepting the pediatrician's recommendation as in G.W.-K.'s best interest.

When a district court applies the best-interest-of-the-child standard, this court reviews its determination for an abuse of discretion. *Mack v. Ashlock*, 112 Nev. 1062, 1065, 921 P.2d 1258, 1261 (1996); *Wallace v. Wallace*, 112 Nev. 1015, 1019, 922 P.2d 541, 543 (1996). NRS 125C.0035(4) provides factors that a court must consider in determining a child's best interest in an action to decide *physical* custody. *Monahan v. Hogan*, 138 Nev. 58, 62, 507 P.3d 588, 592 (Ct. App. 2022). It does not necessarily control other types of best-interest-of-the-child analyses. *Id.* at 62-63, 507 P.3d at 592 (recognizing that additional factors may be salient in determining whether relocation serves a child's best interest). This court has provided best-interest guidance in different instances. For example, this court adopted factors tailored to education for the district court to consider in determining what school a child should attend, without

reference to the NRS 125C.0035(4) factors. *Arcella*, 133 Nev. at 872-73, 407 P.3d at 346-47. And the court has adopted a different list of considerations in a dispute regarding naming a child. *Petit v. Adrianzen*, 133 Nev. 91, 94-95, 392 P.3d 630, 633 (2017).

Here, the district court did not make any decisions regarding joint physical custody, and thus the court did not need to weigh the NRS 125C.0035(4) factors. Indeed, the NRS 125C.0035(4) factors appear largely irrelevant in deciding whether vaccination is in a child's best interest. *See, e.g.*, NRS 125C.0035(4)(d) ("the level of conflict between the parents") & (4)(j) ("[a]ny history of parental abuse or neglect of the child"). In light of the foregoing, the district court was not bound to apply the NRS 125C.0035(4) factors in determining whether vaccination against COVID-19 was in G.W.-K.'s best interest.

Given that the NRS 125C.0035(4) factors do not apply, we acknowledge that district courts lack guidance on how to apply the best-interest-of-the-child standard in the context of a dispute between parents with joint legal custody regarding medical decisions concerning a minor child. Although not exactly on point, we find instructive the factors enumerated in *In re Eric B.*, 235 Cal. Rptr. 22 (Ct. App. 1987), and we adopt them as nonexhaustive factors for district courts to weigh in making best-interest-of-the-child determinations in this context. In *Eric B.*, the California Court of Appeal considered whether a juvenile court abused its discretion by ordering that a minor child retain "dependent child" status for purposes of obtaining cancer treatment over his parents' objections. 235 Cal. Rptr. at 23-24. In reviewing whether medical treatment would serve the child's best interest, the Court of Appeal noted several factors for consideration: (1) "the seriousness of the harm the child is suffering or the

substantial likelihood that he will suffer serious harm," (2) "the evaluation for the treatment by the medical profession," (3) "the risks involved in medically treating the child," and (4) the "expressed preferences of the child." *Id.* at 27 (internal quotation marks omitted). Because these factors are useful in evaluating the best-interest-of-the-child standard in the context of a dispute between parents with joint legal custody concerning the medical treatment of a minor child, we adopt them with two modifications. In order to facilitate individualized determinations, we direct courts to consider the evaluation or recommendation by a medical professional— rather than the evaluation by the medical profession in general. And we clarify that a district court need only consider the child's express preferences if the district court finds that the child is of a sufficient age and capacity to form an intelligent preference. We stress that district courts have discretion as to how much weight to give each factor and that these factors are nonexhaustive, meaning district courts should consider any information that is relevant under the circumstances. *Cf. Arcella,* 133 Nev. at 873, 407 P.3d at 346-47 (emphasizing that the factors are "illustrative rather than exhaustive").

Here, the district court "accepted" the pediatrician's recommendation to vaccinate G.W.-K. against COVID-19 as in his best interest. In terms of the framework we now adopt, the court determined that the recommendation-by-a-medical-professional factor favored vaccination. The district court also took judicial notice of the CDC and AAP guidelines and the research from those organizations regarding the safety of the vaccines and thus considered both the risks involved in the medical treatment and the likelihood that G.W.-K. would suffer serious harm. While Brooke speculated that the COVID-19 vaccine could negatively affect

G.W.-K.'s behavior and fertility, this contention was not supported by any evidence at the hearing, and Brooke has not otherwise shown a risk of serious harm. And the district court found that international travel, which vaccination would facilitate, was in G.W.-K.'s best interest. Although the district court did not have the benefit of express factors to weigh, the court considered similar matters in reaching its decision, and substantial evidence supports its findings. *See Rico v. Rodriguez*, 121 Nev. 695, 702, 120 P.3d 812, 817 (2005) (reviewing a child's best-interest determination for support by substantial evidence in a custody matter). The district court did not specifically address G.W.-K.'s wishes or his capacity to reach an informed decision, and we accordingly do not consider that factor to weigh in either direction.[4] Other than expressing her personal preference against vaccination, Brooke did not provide evidence that vaccination against COVID-19 was not in G.W.-K.'s best interest. Brooke's preference not to vaccinate G.W.-K. in and of itself does not outweigh Scott's preference to vaccinate G.W.-K., and vice versa, Scott's preference in and of itself does not outweigh Brooke's preference. Given that the district court's best-interest finding accords with the factors we adopt here, we affirm. *See Saavedra-Sandoval v. Wal-Mart Stores, Inc.*, 126 Nev. 592, 599, 245 P.3d 1198, 1202 (2010) (holding that we will affirm the district court if it reaches the correct result, even if for the wrong reason).

## CONCLUSION

When parents with court-ordered joint legal custody of a minor child disagree on medical decisions regarding that child, the district court

---

[4]We observe that Scott's testimony that G.W.-K. wanted to be vaccinated was stricken as hearsay.

breaks the tie by determining which course of action is in the best interest of the child. In determining which medical decision is in the child's best interest, the district court should consider (1) the seriousness of the harm the child is suffering or the substantial likelihood that the child will suffer serious harm; (2) the evaluation or recommendation by a medical professional; (3) the risks involved in medically treating the child; and (4) if the child is of a sufficient age and capacity to form an intelligent preference, the expressed preference of the child. We emphasize that a medical professional's recommendation is not necessarily conclusive in every dispute, as each case turns on its particular circumstances. Because the district court's finding of best interest aligns with the factors we now adopt, we affirm its order.

_____, C.J.
Stiglich

We concur:

_____, J.
Cadish

_____, J.
Pickering

_____, J.
Herndon

_____, J.
Lee

_____, J.
Bell

SUPREME COURT
OF
NEVADA

(O) 1947A